UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DANIEL HUTCHINS,

        Plaintiff,                     Case No. 1:22-cv-950

v.                                     Honorable Paul L. Maloney

JOHN C. POLLACK et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis* (ECF No. 4). Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Pollack. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: (i) Plaintiff's official capacity claims against Defendants Parker and Harmon, and (ii) Plaintiff's First Amendment retaliation claim against Defendant Parker. The Court will serve the complaint against the remaining Defendants Parker and Harmon and the following claims remain in the case:

(i) Plaintiff's Eighth and Fourteenth Amendment claims against Defendants Parker and Harmon in their individual capacities regarding his medical care, and (ii) Plaintiff's First Amendment retaliation claim against Defendant Harmon in her individual capacity. Plaintiff's motion to correct clerical error (ECF No. 6) will be denied as unnecessary, and Plaintiff's motion for appointment of counsel (ECF No. 9) will be denied.

## Discussion

I. **Plaintiff's Pending Motions**

   A. **Motion to Correct Clerical Error**

   In Plaintiff's motion to correct clerical error, he states that Defendant Sheriff Pollack was incorrectly identified as "John C. Pollack," instead of "C. John Pollack," on the docket for this matter. (ECF No. 6, PageID.7.) Plaintiff requests that the Court direct the Clerk to correct this error. (*Id.*)

   It appears to the Court that Sheriff Pollack's name is in fact "John C. Pollack," rather than "C. John Pollack." *See* Branch County Sheriff's Office, https://www.countyofbranch.com/sheriff/ (last visited Dec. 28, 2022) (identifying the sheriff as "John C. Pollack"). Moreover, as set forth in this opinion, the Court will dismiss Sheriff Pollack from this action because Plaintiff fails to state a claim against him upon which relief may be granted. Accordingly, for these reasons, Plaintiff's motion to correct clerical error (ECF No. 6) will be denied as unnecessary.

   B. **Motion for Appointment of Counsel**

   Plaintiff has filed a motion requesting the appointment of counsel. (ECF No. 9.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's

discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and has determined that, at this time, the assistance of counsel is not necessary to the proper presentation of Plaintiff's position. Plaintiff's motion for the appointment of counsel (ECF No. 9) therefore will be denied.

## II. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Charles Egeler Reception & Guidance Center (RGC) in Jackson, Jackson County, Michigan. The events about which he complains, however, occurred at the Branch County Jail in Coldwater, Branch County, Michigan. Plaintiff sues the following Branch County Jail staff and medical personnel in their official and individual capacities: Sheriff John C. Pollack, Dr. Daryl T. Parker, and Registered Nurse Shauna Harmon. (ECF No. 1, PageID.2.)

In Plaintiff's complaint and attached affidavit, he alleges that he received inadequate medical care during his incarceration at the Branch County Jail. (*See generally id.*; ECF No. 1-1.)[1] Specifically, Plaintiff alleges that after he was booked into the Branch County Jail on March 18, 2022, he notified Sergeant Austin Nichols (not a party) that he was "suffering from tooth pain with a broken tooth" and that he had "a seizure disorder." (ECF No. 1-1, PageID.8.) Plaintiff states that

---

[1] In this opinion, the Court corrects the spelling and capitalization in quotations from Plaintiff's filings.

3

Defendant Harmon examined Plaintiff's broken tooth on March 28, 2022, and referred Plaintiff to Defendant Parker. (*Id.*) On April 4, 2022, Plaintiff had an appointment with Defendant Parker, and Defendant Parker prescribed Plaintiff "Naproxin 500mg twice daily for pain," but Defendant Parker "refused to refer [Plaintiff] to a dentist." (*Id.*) Plaintiff also informed Defendant Parker that the seizure medicine that Defendant Parker had prescribed "was causing severe numbness in [Plaintiff's] hands and feet." (*Id.*) Defendant Parker "refused to change [Plaintiff's] seizure medication, instead prescribing [Plaintiff] another medication to reduce the numbness." (*Id.*)

On April 6, 2022, Plaintiff asked Defendant Harmon for the medication that Defendant Parker had prescribed Plaintiff to reduce numbness, and Defendant Harmon informed Plaintiff that she "didn't have any." (*Id.*, PageID.9.) Plaintiff advised Defendant Harmon that he "would not take anymore of the seizure medication until it was changed." (*Id.*) Plaintiff further advised Defendant Harmon that his tooth hurt. (*Id.*)

The following day, April 7, 2022, Defendant Harmon told Plaintiff that she again did not have the medication that was prescribed to Plaintiff for numbness. (*Id.*) Plaintiff advised Defendant Harmon that the "Naproxin 500mg was not reducing [his] tooth pain," and he requested a referral to a dentist. (*Id.*) Defendant Harmon told Plaintiff that the Branch County Jail did not employ a dentist. (*Id.*) Plaintiff filed a grievance on April 13, 2022, regarding his severe tooth pain and the lack of dental care. (*Id.*) On April 14, 2022, an "unknown jail nurse" (not a party) examined Plaintiff's tooth, and he was prescribed an antibiotic to be taken twice a day. (*Id.*)

On April 19, 2022, Defendant Harmon told Plaintiff that Defendant Parker "would not allow [Plaintiff] to see a dentist or change the prescribed seizure medication." (*Id.*) Plaintiff filed a grievance on April 19, 2022, regarding the lack of dental care and his ongoing pain. (*Id.*) That

same day, Defendant Harmon told Plaintiff "that it didn't matter how many complaints [he] filed[; he] would not see a dentist." (*Id.*)

On April 22, 2022, Branch County Jail Administrator Fred Blankenship (not a party) and Defendant Harmon told Plaintiff that he "could stop complaining because the jail had contracted with a dentist for [Plaintiff]." (*Id.*, PageID.9–10.) On April 26, 2022, Plaintiff met with Jail Administrator Blankenship and Defendant Harmon regarding his April 23, 2022, grievance, and Defendant Parker "renewed [Plaintiff's] prescription for Naproxin 500mg twice daily." (*Id.*, PageID.10.)

Subsequently, on May 3, 2022, Plaintiff "complained of severe pain and swelling of [his] gum[s]." (*Id.*) Defendant Parker prescribed Plaintiff "more antibiotics." (*Id.*) On May 23, 2022, Plaintiff mailed complaints against Defendants Parker and Harmon to "the Michigan Board of Licensing and Regulatory Affairs for a lack of dental care." (*Id.*)

On May 26, 2022, Plaintiff had an appointment with a dentist, Dr. Frederick (not a party), and Plaintiff received "two resin filings." (*Id.*, PageID.11.) Dr. Fredrick advised Plaintiff that the filings would "cure [his] tooth pain." (*Id.*)

Plaintiff saw Defendant Harmon regarding his tooth pain on June 13, 2022. (*Id.*) Plaintiff showed Defendant Harmon his tooth, explaining that he "could stick a toothpick through [his] teeth in a hole between the teeth," and that he believed the dentist "had failed to properly fill [his] tooth." (*Id.*) Defendant Harmon observed that Plaintiff's gums appeared to be swollen, and Defendant Parker prescribed more antibiotics. (*Id.*)

On June 17, 2022, Plaintiff again saw Defendant Harmon regarding his tooth pain. (*Id.*) Subsequently, on June 30, 2022, Defendant Harmon gave Plaintiff "four packets of Orasol gel" to help with Plaintiff's tooth pain. (*Id.*) At that time, Plaintiff requested that Defendant Harmon ask

5

Defendant Parker to prescribe Plaintiff a different "neurological medication that didn't harm [him]." (*Id.*) Defendant Harmon said she would talk with Defendant Parker about the medication. (*Id.*)

Subsequently, on July 7, 2022, Plaintiff had an appointment with Defendant Parker, and Defendant Parker "said he would not refer [Plaintiff] back to the dentist and he would not change the seizure medication." (*Id.*) On July 18, 2022, Defendant Harmon advised Plaintiff that he would be seen by a neurologist because Defendant Parker "refused to treat [Plaintiff's] neurological problems." (*Id.*, PageID.12.) On August 1, 2022, Defendant Harmon told Plaintiff that Defendant Parker would allow Plaintiff to take Tylenol for his tooth pain, but that Defendant Parker would not renew Plaintiff's prescription for Naproxin 500mg. (*Id.*)

On August 17, 2022, Plaintiff saw Defendant Harmon, and Plaintiff advised her that "the Tylenol was not helping [his] tooth pain." (*Id.*) Defendant Harmon gave Plaintiff "four more packets of Orasol gel," but "she said [Plaintiff] would not get anything more to treat [his] tooth pain because of [his] grievances." (*Id.*)

On September 8, 2022, Plaintiff submitted a healthcare request "asking for treatment for [his] seizure problems and requesting to see a dentist." (*Id.*, PageID.13.) Plaintiff received no response. (*Id.*) Plaintiff filed a grievance on September 12, 2022, regarding the lack of treatment for his neurological problems. (*Id.*) The next day, September 13, 2022, Jail Administrator Blankenship responded to Plaintiff's grievances, advising Plaintiff that he would see a neurologist in October. (*Id.*) Plaintiff appealed the September 13, 2022, grievance response to Defendant Pollack. (*Id.*, PageID.14.) On September 14, 2022, the Branch County undersheriff (not a party) responded to Plaintiff's grievance appeal and "threatened to move [Plaintiff] to a 'medical cell.'" (*Id.*) Plaintiff states that "medical cells" are "discipline cells for inmates [staff] don't like." (*Id.*)

6

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments to the U.S. Constitution. (ECF No. 1, PageID.3–5.) As relief, Plaintiff seeks compensatory, punitive, and nominal damages, as well as declaratory relief and "all costs in this suit." (*Id.*, PageID.5.)

### III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  Official Capacity Claims

Plaintiff indicates that he is suing all Defendants in both their official and individual capacities. (ECF No. 1, PageID.2.) Official capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)). An official capacity suit is to be treated as a suit against the entity itself. *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); *see also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *see also Graham*, 473 U.S. at 165–66.

Here, Plaintiff's suit against Defendants—all of whom work at the Branch County Jail—in their official capacities necessarily intends to impose liability on the county. Branch County, however, may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell*, 436 U.S. at 694. Instead, a county is liable only when its official policy or custom causes the injury. *Connick*, 563 U.S. at 60. This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire*, 330 F.3d at 815 (6th Cir. 2003).

"Governmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged violation of constitutional rights." *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (citing *Monell*, 436 U.S. at 692).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the United States Court of Appeals for the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

In this action, Plaintiff alleges that Defendant Pollack has "failed to produce and enact safe and proper policies and procedures that would [en]sure the Plaintiff medical treatment, including Pollack's refusal to hire a dentist." (ECF No. 1, PageID.4.) With respect to Plaintiff's allegation regarding the jail's "refusal to hire a dentist," Plaintiff is unable to show that this alleged policy or custom caused his constitutional injury. Although Plaintiff contends that the jail should have employed a dentist at the facility, Plaintiff does not allege that he was unable to see a dentist as a result of this alleged policy or custom. Instead, the jail referred Plaintiff to an outside dentist, and Plaintiff received two resin filings from this outside dentist. (ECF No. 1-1, PageID.11.) It is clear that Plaintiff disagreed with medical personnel's decision to refer him to an outside dentist for treatment, rather than providing dental care at the jail. However, "a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017) (citations omitted); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) ("[A] desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim."

9

(citations omitted)). Under these circumstances, Plaintiff is unable to show that the "refusal to hire a dentist" was the moving force behind his alleged constitutional injury because he was referred to an outside dentist for dental care. (ECF No. 1-1, PageID.11.); *see Turner*, 412 F.3d at 639. Furthermore, with respect to Plaintiff's allegation that Defendant Pollack "failed to produce and enact safe and proper policies and procedures that would [en]sure the Plaintiff medical treatment," Plaintiff fails to identify or describe the "safe and proper policies and procedures" he believes should have been implemented. (ECF No. 1, PageID.4.) Plaintiff's vague and conclusory assertion regarding these unidentified "policies and procedures" unsupported by facts is insufficient to show that any policy or procedure at the jail caused his alleged constitutional injury. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

Accordingly, for the reasons set forth above, the Court will dismiss Plaintiff's official capacity claims against Defendants.

### B. Claims Against Defendant Pollack

Plaintiff alleges that as the Branch County Sheriff, Defendant Pollack is "responsible for the medical care of Branch [County] Jail inmates." (ECF No. 1, PageID.3.) As discussed above, Plaintiff also alleges that Defendant Pollack "failed to produce and enact safe and proper policies and procedures that would [en]sure the Plaintiff medical treatment, including Pollack's refusal to hire a dentist." (*Id.*, PageID.4.) Further, Plaintiff states that following his receipt of Jail Administrator Blankenship's response to Plaintiff's September 13, 2022, grievance, he appealed the response to Defendant Pollack. (ECF No. 1-1, PageID.14.) The next day, September 14, 2022, the Branch County undersheriff (not a party) responded to Plaintiff's grievance appeal and "threatened to move [Plaintiff] to a 'medical cell.'" (*Id.*)

As an initial matter, for the reasons set forth above, Plaintiff's vague and conclusory assertion regarding Defendant Pollack's alleged failure to "produce and enact safe and proper

10

policies and procedures that would [en]sure the Plaintiff medical treatment, including Pollack's refusal to hire a dentist," is insufficient to state a claim upon which relief may be granted because Plaintiff fails to identify or describe any policies or procedures and the "refusal to hire a dentist" at the jail did not prevent Plaintiff from receiving dental care because he was referred to an outside dentist for treatment. *See supra* Part III.A.

Moreover, it is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002). Here, Plaintiff alleges that he appealed the response to his September 13, 2022, grievance to Defendant Pollack, and that the next day, the undersheriff (not a party) responded to Plaintiff's grievance appeal. (ECF No. 1-1, PageID.14.) It is not clear from Plaintiff's allegations that Defendant Pollack himself received Plaintiff's grievance appeal. Even if Defendant Pollack received Plaintiff's grievance appeal, nothing in the complaint suggests that Defendant Pollack had any involvement in the undersheriff's response to the grievance appeal. And, regardless, the Sixth Circuit has held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The reason is that there must be active unconstitutional behavior. Failing to

intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance. *Id.*

Furthermore, to the extent that Plaintiff seeks to hold Defendant Pollack liable for the actions of his subordinates, government officials, such as Defendant Pollack, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendant Pollack encouraged or condoned the conduct of his subordinates, or authorized, approved, or knowingly acquiesced in

12

the conduct. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant Pollack was personally involved in the alleged violations of Plaintiff's constitutional rights. Because Plaintiff has failed to allege that Defendant Pollack engaged in any active unconstitutional behavior, Plaintiff fails to state a claim against him.

### C.     First Amendment Retaliation Claims

Plaintiff claims that because he had filed grievances and a complaint with the Michigan Board of Licensing and Regulatory Affairs, Defendants Parker and Harmon retaliated against him by (i) failing to renew his pain medication and (ii) refusing to refer Plaintiff to a dentist.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

#### 1.     Protected Conduct

With respect to the first element of a retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."). Here, Plaintiff references filing grievances and a complaint with the Michigan

13

Board of Licensing and Regulatory Affairs regarding the medical care that he was receiving at the Branch County Jail. Because the filing of non-frivolous grievances and complaints constitutes protected activity, at this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has stated the first element of a retaliation claim.

### 2. Adverse Action

With regard to the second element, the adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Plaintiff claims that Defendants Parker and Harmon denied him, or interfered with his receipt of, medical care, including denying him medication for his tooth pain and seizures and refusing to refer him to a dentist. The Sixth Circuit has held that the denial of, or a delay in, medical treatment—including the "discontinuance of medication"—may constitute an adverse action. *See O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338, 343 (6th Cir. Oct. 17, 2014) (citation omitted) (discussing that a "delay in treatment and discontinuance of medication would likely deter a prisoner . . . who believed he needed the medication to avoid the symptoms from which he allegedly suffered"). As such, at this stage of the proceedings, the Court assumes, without deciding, that the alleged interference with Plaintiff's receipt of medical care and medication constitutes adverse action.

### 3. Retaliatory Motive

Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

#### a. Defendant Harmon

Plaintiff alleges that Defendant Harmon made statements indicating that she was taking the above-discussed adverse actions against Plaintiff because he had engaged in protected conduct.

14

Although Plaintiff has by no means proven retaliation, viewing the allegations in the complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff's First Amendment retaliation claims against Defendant Harmon may not be dismissed on initial review.

### b. Defendant Parker

As to Plaintiff's retaliation claim against Defendant Parker, Plaintiff's allegations regarding this third element of a First Amendment retaliation claim fall short.

Although, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the Sixth Circuit, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive).

In this action, although Plaintiff alleges that he filed grievances regarding his medical care and submitted a complaint to the Michigan Board of Licensing and Regulatory Affairs before Defendant Parker took adverse actions against Plaintiff—suggesting temporal proximity—nothing in the complaint suggests that Defendant Parker was aware that Plaintiff had filed these grievances or the Michigan Board of Licensing and Regulatory Affairs complaint. Instead, Plaintiff merely alleges the ultimate fact of retaliation; however, he alleges no *facts* from which to reasonably infer that Defendant Parker was motivated by any protected conduct. Under these circumstances, a

vague suggestion of temporal proximity alone is insufficient to show a retaliatory motive. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). Furthermore, such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, because Plaintiff fails to allege any facts to suggest that Defendant Parker was motivated by Plaintiff's protected conduct, Plaintiff fails to state a First Amendment retaliation claim against Defendant Parker.

### D.    Eighth Amendment & Fourteenth Amendment Medical Care Claims

Plaintiff alleges that Defendants Harmon and Parker provided inadequate medical care during his incarceration at the Branch County Jail for his dental-related pain and for his seizures.

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). Both "[t]he Eighth and Fourteenth Amendments are violated 'when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety.'" *Id.* (citations omitted). The application of

the proper constitutional right depends on the nature of plaintiff's detention: the Eighth Amendment applies to convicted prisoners and the Fourteenth Amendment applies to pretrial detainees. *Id.* (citations omitted). Because Plaintiff does not specify the nature of his custody, the Court considers Plaintiff's claims under both the Eighth and Fourteenth Amendment standards.

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899; *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

Until recently, the Sixth Circuit applied the Eighth Amendment's prohibition on cruel and unusual punishment to Fourteenth Amendment claims for inadequate medical care as well, requiring that a plaintiff demonstrate both the objective and subjective elements of deliberate indifference. *See Trozzi v. Lake Cnty.*, 29 F.4th 745, 751–52 (6th Cir. 2022) (discussing case history for the Eighth Amendment's deliberate indifference standard). However, after the Supreme Court's opinion in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), which eliminated the subjective element of a pretrial detainee's excessive force claim, in *Brawner v. Scott Cnty.*, 18 F.4th 551 (6th

17

Cir. 2021), the Sixth Circuit "appl[ied] *Kingsley*'s reasoning to claims alleging inadequate medical care[, b]ut [the Sixth Circuit] stopped short of fully *eliminating* the subjective injury." *Trozzi*, 29 F.4th at 752–53 (emphasis in original) (quoting *Brawner*, 14 F.4th at 591). Specifically, the Sixth Circuit held that:

> a plaintiff must satisfy three elements for an inadequate-medical-care claim under the Fourteenth Amendment: (1) the plaintiff had an objectively serious medical need; (2) a reasonable officer at the scene (knowing what the particular jail official knew at the time of the incident) would have understood that the detainee's medical needs subjected the detainee to an excessive risk of harm; and (3) the prison official knew that his failure to respond would pose a serious risk to the pretrial detainee and ignored that risk.

*Id.* at 757–58.

Here, although it appears that Plaintiff received medical treatment during his incarceration at the Branch County Jail for dental-related pain and other dental issues, as well as for his seizures, at this stage of the proceedings, taking Plaintiff's allegations as true and in the light most favorable to him, applying either the Eighth Amendment or Fourteenth Amendment standard to Plaintiff's inadequate medical claims, the Court may not dismiss his medical care claims against Defendants Parker and Harmon on initial review.[2]

## Conclusion

Plaintiff's motion to correct clerical error (ECF No. 6) will be denied as unnecessary, and Plaintiff's motion for appointment of counsel (ECF No. 9) will be denied. Further, having conducted the review required by the PLRA, the Court determines that Defendant Pollack will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C.

---

[2] Plaintiff does not specify the nature of his custody at the Branch County Jail; however, it appears that Plaintiff may have been on parole when he was incarcerated at the Branch County Jail. *See* MDOC's Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=438751 (last visited Jan. 11, 2023) (setting forth Plaintiff's active sentences). As such, the Eighth Amendment would apply to Plaintiff's medical care claims.

§ 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: (i) Plaintiff's official capacity claims against Defendants Parker and Harmon, and (ii) Plaintiff's First Amendment retaliation claim against Defendant Parker. Plaintiff's Eighth and Fourteenth Amendment claims against Defendants Parker and Harmon in their individual capacities regarding his medical care remain in the case. Additionally, Plaintiff's First Amendment retaliation claim against Defendant Harmon in her individual capacity remains in the case. The Court will serve the complaint against Defendants Parker and Harmon.

An order consistent with this opinion will be entered.

Dated:  January 11, 2023                              /s/ Paul L. Maloney
                                                                             Paul L. Maloney
                                                                             United States District Judge