UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL HUTCHINS #438751,

    Plaintiff,                                     Hon. Paul L. Maloney

v.                                               Case No. 1:22-cv-950

JOHN C. POLLACK, et al.,

    Defendants.
_____/

**ORDER AND REPORT AND RECOMMENDATION**

Plaintiff Daniel Hutchins, a prisoner currently incarcerated with the Michigan Department of Corrections at the Thumb Correctional Facility, filed a pro se complaint on October 12, 2022, pursuant to 42 U.S.C. § 1983, against Branch County Sheriff John Pollack, Daryl T. Parker, M.D., and Shauna Harmon, R.N. Hutchins alleged claims arising out of his detention at the Branch County Jail from March through November 2022. After reviewing the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), the Court dismissed Hutchins's claims against Pollack and allowed his claims for denial of dental and medical care against Defendants Dr. Parker and Nurse Harmon and his First Amendment retaliation claim against Nurse Harmon to proceed. (ECF Nos. 10 and 11.)

Presently before me is Defendants' Motion for Summary Judgment. (ECF No. 54.) In addition, Hutchins has filed a Motion to Strike Defendants' Exhibit E in support of their motion for summary judgment. (ECF No. 56.) Both motions are fully briefed. For the reasons that follow, I will **DENY** Hutchins's motion to strike. Pursuant to 28 U.S.C. § 636(b)(1)(B), I

recommend that the Court **GRANT** Defendants' motion and dismiss Hutchins's claims **with prejudice**.

## I. Background

On March 18, 2022, Hutchins was arrested and booked into the Branch County Jail.[1] During booking, Hutchins informed jail staff that he was previously incarcerated at the Calhoun County Jail. (ECF. No. 54-1 at PageID.287.) During his medical screening, Hutchins told staff that he was taking medication for epilepsy. The same day, Nurse Harmon called the Calhoun County Jail to obtain Hutchins's medication list and was advised that Hutchins was taking Topamax 100mg and Naproxen 500mg. Harmon obtained phone approval for these medications for Hutchins from Dr. Parker. Dr. Parker started Hutchins on these medications on March 21, 2022. (*Id.* at PageID.287–89; ECF No. 54-2 at PageID.323–24; ECF No. 60 at PageID.373.) On March 22, 2022, Hutchins signed an authorization for release of his Calhoun County Jail medical records, which Nurse Harmon sent by fax the same day. Harmon completed Hutchins's initial health screening on March 28, 2022. The Calhoun County Jail records confirmed that Hutchins was taking Topamax 100mg BID (twice a day) for epilepsy and Naproxen 500mg for neuropathy. (ECF No. 54-1 at PageID.291–94; ECF No. 54-2 at PageID.324.)

On April 4, 2022, Dr. Parker saw Hutchins for an initial assessment. Dr. Parker noted that Hutchins's health issues included dental caries, a traumatic brain injury in 2000, a history of neuropathy, and a history of epilepsy. He noted that Hutchins was on Topamax, Neurontin, and Elavil in the past. Dr. Parker continued Hutchins on Topamax and ordered Pamelor 25mg HS for neuropathy and Naproxen 500mg BID for 15 days for tooth pain. (ECF No. 54-1 at PageID.296;

---

[1] In his complaint, Hutchins alleged denial-of-medical/dental-care claims under both the Eighth Amendment and the Fourteenth Amendment. Based on the record, his status as either a pretrial detainee or a convicted prisoner during his stay at the Branch County Jail is not clear. Because Defendants cite the less-demanding Fourteenth Amendment standard in their motion, I will analyze Hutchins's denial-of-medical/dental claims under that standard.

2

ECF No. 60 at PageID.373.) Although not reflected in the treatment note, Hutchins alleges that he told Dr. Parker that the Topamax was causing severe numbness in his hands and feet and cognition issues, which is why Dr. Parker ordered the Pamelor. (ECF No. 1-1 at PageID.8.)

On April 6, 2022, Nurse Harmon assisted Officer Waterbury in searching another inmate's cell after jail staff determined that the inmate had hidden a small item under his bunk. During the search they found two of Hutchins's Topamax pills. (ECF No. 54-1 at PageID.294–99; ECF No. 54-2 at PageID.324.) After Nurse Harmon informed him of the situation, Dr. Parker ordered Hutchins's medications to be crushed so that Hutchins could not divert his medication to other prisoners. (ECF No. 54-1 at PageID.299; ECF No. 60 at PageID.373.) Hutchins claims that the same day as the cell search, after Nurse Harmon told him that she did not have the Pamelor that Dr. Parker had ordered, he told her that he would not take the seizure medication until it was changed. (EF No. 1-1 at PageID.9.)

On April 7, 2022, Hutchins began refusing his medications, including Topamax, after he was advised of the crush order. After Nurse Harmon confirmed that the medications could be crushed, Hutchins said that she could "keep all her meds," and refused to sign the medication refusal form. Later in the day, Hutchins requested and was provided his Naproxen. (ECF No. 54-1 at PageID.299, 301–02; ECF No. 54-2 at PageID.324–25; ECF No. 60 at PageID.373.) Hutchins claims that he told Nurse Harmon on April 7 that he refused to take Topamax, not because of the crush order, but because he did not have the Pamelor for numbness relief. (ECF No. 1-1 at PageID.9.)

On April 13, 2022, Hutchins was seen for continued complaints of tooth pain with temperature sensitivity. Dr. Parker ordered Clindamycin 150mg x3 tabs BID for ten days. (ECF No. 54-1 at PageID.303; ECF No. 60 at PageID.373.) On April 19, 2022, Nurse Harmon saw

3

Hutchins for tooth pain. She observed slight swelling with no redness. Nurse Harmon contacted Dr. Parker, who directed that Hutchins should continue his treatment plan. Nurse Harmon advised Hutchins that he should continue his treatment plan, brush his teeth lightly after each meal, and kite if his symptoms worsened. (ECF No. 54-1 at PageID.304; ECF No. 54-2 at PageID.325; ECF No. 60 at PageID.373.) Although not reflected in the treatment notes, Hutchins claims that during this visit, Nurse Harmon told him that Dr. Parker would not change the prescribed seizure medication. (ECF No. 1-1 at PageID.9.)

On April 22, 2022, Dr. Parker approved continuation of Naproxen through Hutchins's completion of his Clindamycin prescription. (ECF No. 54-1 at PageID.299; ECF No. 54-2 at PageID.325; ECF No. 60 at PageID.374.)

On April 25, 2022, Nurse Harmon spoke with Hutchins about his pain during "med pass" and informed him that his order for his pain medication had been completed. She asked Hutchins if he would like her to see about having the order refilled, and he declined. When she asked Hutchins how his tooth was doing, he responded, "does it matter," and walked away. (ECF No. 54-1 at PageID.299–300; ECF No. 54-2 at PageID.325.) On April 26, 2022, Nurse Harmon saw Hutchins for continued tooth pain. She noted that Hutchins had dental caries and a possible broken tooth. Hutchins's Naproxen prescription was extended 30 days. Nurse Harmon placed a referral for Hutchins to see a dentist on May 26, 2022. (ECF No. 54-1 at PageID.307; ECF No. 54-2 at PageID.325; ECF No. 60 at PageID.374.) Nurse Harmon next saw Hutchins for tooth pain on May 3, 2022. She noted slight redness in his gums with tooth swelling. She obtained an order from Dr. Parker to repeat Clindamycin 450mg for ten days. Nurse Harmon advised Hutchins to brush and rinse after each meal. (ECF No. 54-1 at PageID.308; ECF No. 54-2 at PageID.325; ECF No. 60 at PageID.374.)

On May 26, 2022, Hutchins was seen by Dr. Evan Frederick, D.D.S. Dr. Frederick found missing fillings and decay in teeth ## 18 and 19. He removed the caries and restored the fillings. Dr. Frederick did not indicate that follow-up care was needed. (ECF No. 1 at PageID.309.)

Although not reflected in the medical record, Hutchins claims that on May 31, 2022, he told Nurse Harmon that he was having cognition problems and seeing spots in his vision and that his tooth still hurt. (ECF No. 1-1 at PageID.11.)

On June 12, 2022, Hutchins submitted a sick call request indicating that two upper teeth on the left side were causing him pain when he slept or ate. Nurse Harmon saw Hutchins the following day, noting that the pain was unrelated to the teeth that Dr. Frederick had treated. She noted redness around tooth # 11 and contacted Dr. Parker, who ordered Clindamycin 450mg BID for ten days and Naproxen 500mg. (ECF No. 1 at PageID.310–11; ECF No. 54-2 at PageID.325–26; ECF No. 60 at PageID.374.) On June 17, 2022, Hutchins complained that he thought he had a hole in his tooth and that he believed he was having vision issues. He told Nurse Harmon that he did not want Topamax. Nurse Harmon noted gum redness and rising on tooth # 10 but found no holes in Hutchins's teeth. Dr. Parker provided no new orders as Hutchins was still receiving Clindamycin 450mg. The Naproxen was continued. (ECF No. 54-1 at PageID.312; ECF No. 54-2 at PageID.326; ECF No. 60 at PageID.374.)

Although not reflected in the medical record, Hutchins claims that, on June 30, 2022, Nurse Harmon called him to the medical room and gave him four packets of Orasol Gel that she said would help with his tooth pain. He alleges that, during that visit, Nurse Harmon agreed to speak with Dr. Parker about prescribing neurological medication that did not "harm" him. (ECF No. 1-1 at PageID.11.) Again, not reflected in the medical record, Hutchins claims that on July 7, 2022 (the same date Nurse Harmon documented seeing him for dental issues), Hutchins claims

5

that Dr. Parker saw him and told him that he would not refer him back to the dentist and would not change the seizure medication. (*Id.*)

On July 7, 2022, Nurse Harmon saw Hutchins for dental issues. Hutchins reported that Dr. Frederick had stated that another tooth needed work, but he had run out of time to finish. Following this appointment, Nurse Harmon reviewed Hutchins's dental records and noted that they indicated that he should return only as needed. Dr. Frederick's notes did not indicate that he had not completed his work. (ECF No. 54-1 at PageID.313; ECF No. 54-2 at PageID.326.)

On July 14, 2022, Hutchins sent a note to Nurse Harmon regarding his request to be placed on seizure medication. He complained that he could not handle Topamax and was experiencing daily visual episodes and related his "understanding that Dr. Parker may switch to a different medicine." (ECF No. 54-1 at PageID.314.) On July 15, 2022, Nurse Harmon saw Hutchins for his complaints of losing time for over 20 years and his request to be placed on seizure medications. She informed Hutchins that last time she spoke with Dr. Parker there were no new orders for seizure medication but told him that she could schedule an appointment with Dr. Parker to discuss medications. Nurse Harmon contacted Dr. Parker, who instructed her to place a referral for Hutchins with Borgess Neurology. Nurse Harmon was advised that Borgess would fax new patient information forms to the jail, which were needed to schedule an appointment. (ECF No. 54-1 at PageID.315; ECF No. 54-2 at PageID.326; ECF No. 60 at PageID.374.) On July 26, 2022, the jail faxed Borgess Neurology a consultation form containing Hutchins's reported symptoms. (ECF No. 54-1 at PageID.316–17.)

On August 1, 2022, Nurse Harmon informed Dr. Parker that Hutchins's Naproxen was going to expire, and Dr. Parker issued an order to start Hutchins on Tylenol 500mg at bedtime if

6

he would take the medication. (ECF No. 54-1 at PageID.300; ECF No. 54-2 at PageID.327; ECF No. 60 at PageID.374.)

On August 15, 2022, Nurse Harmon followed up on the appointment with the neurologist. She was advised that due to availability issues, the appointment could not be scheduled until November 10, 2022. (ECF No. 54-1 at PageID.300, 318–19; ECF No. 54-2 at PageID.327.) On August 21, 2022, Hutchins sent a sick call request asking to be seen about swelling and pain in his mouth. The following day, Nurse Harmon saw Hutchins for complaints of a cough, swollen tongue, and swollen glands. Hutchins indicated a history of fall allergies. Nurse Harmon noted that Hutchins did not have swollen lymph nodes. Dr. Parker determined that no new order was necessary. (ECF No. 54-1 at PageID.320–21; ECF No. 54-2 at PageID.327; ECF No. 60 at PageID.375.)

It appears that on November 10, 2022, Hutchins was taken to Borgess for his neurology appointment. However, because his transportation was late, the appointment was cancelled and could not be rescheduled prior to Hutchins's transfer to the MDOC on November 16, 2022. (ECF No. 54-2 at PageID.327.)

## II.  Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th

Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III.  Discussion

#### A.  Hutchins's Motion to Strike

Hutchins moves to strike Defendants' Exhibit E to their brief in support of their motion for summary judgment. Exhibit E is a letter dated October 6, 2022, from the State of Michigan Department of Licensing and Regulatory Affairs (LARA) regarding a complaint that Hutchins submitted against Nurse Harmon. (ECF No. 54-5.) Defendants attached the letter solely to show that Hutchins had in fact engaged in protected conduct for purposes of his retaliation claim. (ECF No. 54 at PageID.283.)

Hutchins contends that the letter from LARA constituted legal mail that was apparently improperly opened by jail staff and never given to him. He seeks exclusion of the evidence pursuant to Federal Rule of Evidence 403, which permits a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Hutchins contends that, because the LARA letter is "an illegally obtained legal document," it "cannot be considered admissible for any reasons." (ECF No. 56 at PageID.345.) He further adds that "Defendants [sic] attempt to use stolen, privileged legal property, and portray it as admissible evidence is reprehensible." (*Id.* at PageID.346.)

The motion is properly denied for several reasons. First, Hutchins fails to show that Defendants illegally obtained the letter. Second, even assuming that the letter technically constitutes legal mail, he fails to cite any authority for his proposition that it is privileged.

8

Finally, he fails to show that exclusion is warranted under Rule 403. In fact, the letter supports Hutchins's retaliation claim, as Defendants offer it to show that Hutchins engaged in protected conduct—the first element of such a claim. It is difficult to see how the letter could be unfairly prejudicial to Hutchins or be excludable on any other ground.

    **B.**    **Defendants' Motion for Summary Judgment**

        **1.**    **Dental/Medical Care Claims**

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). Historically, the Sixth Circuit and other circuits have applied the Eighth Amendment's prohibition on cruel and unusual punishment to Fourteenth amendment claims for inadequate medical care. *Trozzi v. Lake Cnty*, 29 F.4th 745, 751–52 (6th Cir. 2022).

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899; *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to

establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The Eighth Amendment's subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

In *Brawner v. Scott County*, 14 F.4th 585 (6th Cir. 2021), the Sixth Circuit shifted its approach in Fourteenth Amendment cases, modifying the subjective element of the deliberate-indifference test to "something akin to reckless disregard." *Trozzi* 29 F.4th at 752–53 (quoting *Brawner*, 14 F.4th at 596). Now, to establish the subjective component, a plaintiff alleging a Fourteenth Amendment claim "must prove that a defendant acted deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 315–16 (6th Cir. 2023) (internal quotation marks omitted).

### a. Objective Component

As with a claim under the Eighth Amendment, to state a claim for constitutionally inadequate medical care under the Fourteenth Amendment, a plaintiff must first demonstrate an objectively serious medical need. *Trozzi*, 29 F.4th at 757–58. Here, Hutchins contends that he was denied treatment, or at least adequate treatment, for his dental issues and seizure condition. As set forth in detail above, the medical records show that Hutchins received treatment for both

his dental and seizure issues during his stay at the jail. Harmon was booked into the jail on March 18, 2022, and had begun receiving Topamax and Naproxen by March 21, 2022.

### i.     Dental Pain

As for this issue, Dr. Parker saw Hutchins on April 4, 2022, and prescribed Naproxen for tooth pain. When Hutchins continued to complain of tooth pain about a week later, Dr. Parker ordered an antibiotic in addition to Naproxen. On April 25, 2022, after the order for Naproxen and the antibiotic had expired, Nurse Harmon asked Hutchins if he would like her to inquire about extending the order, but he declined. The next day, Nurse Harmon obtained an order from Dr. Parker to extend the Naproxen order and scheduled Hutchins for an outside appointment with a dentist, which occurred on the scheduled date. In early May, prior to the dental appointment, Nurse Harmon saw Hutchins for complaints about dental pain and obtained an order from Dr. Parker to repeat the antibiotic. Later, in June and July, when Hutchins complained about pain in two additional teeth, he was given an antibiotic and pain medication. His medical records indicated no complaints of dental pain after this time.

Because Hutchins was given some treatment for his dental pain (pain medication and an antibiotic), the seriousness of his dental issue is properly gauged by examining the effect of delay in seeing a dentist. *See Santiago v. Ringle*, 734 F.3d 585, 590–91 (6th Cir. 2013) (holding that because the plaintiff had received some treatment for his condition, the plaintiff was required to present medical proof establishing that delay of the desired treatment caused a serious medical injury); *Blosser v. Gilbert*, 422 F. App'x 453, 460–61 (6th Cir. 2011) (holding that the plaintiff, who had received pain medication, monitoring, and care but was not referred to a specialist for almost a month was required to present "verifying medical evidence of the detrimental effect of the delay"). Hutchins fails to "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier*, 238 F.3d at 742. In fact, the

treatment record from his dental appointment shows that the dentist repaired Hutchins's teeth without complication. Moreover, "where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (internal quotation marks and brackets omitted). In short, Hutchins's claim amounts to nothing more than his disagreement with the proper treatment for his dental issue, which is, at most, a malpractice claim. *See Helphenstine*, 60 F.4th at 322. Accordingly, I recommend that the Court conclude that Hutchins has not established the objective component on this aspect of his Fourteenth Amendment claim.

### ii. Seizure Issues

For seizure issues, Dr. Parker prescribed Topamax, which Hutchins had been receiving at the Calhoun County Jail. Hutchins admits that he took Topamax from March 21 to April 6 or 7, 2022, when he refused to continue taking it. Crediting Hutchins's allegations in his affidavit, he raised the issue of new seizure medication with Nurse Harmon a few times and once with Dr. Parker between April and early July 2022, but notes that he began to seek treatment again on July 14, 2022, because the seizure disorder was becoming worse. (ECF No. 57 at PageID.358.) When he raised the issue, an appointment was made with a neurologist.

I find the "delay in treatment" standard set forth above provides the proper basis to assess the seriousness of Hutchins's seizure issues. The present situation is analogous to that in *Dearing v. Mahalma*, No. 1:11-cv-204, 2013 WL 8696751 (S.D. Ohio Oct. 7, 2013), *report and recommendation adopted*, 2014 WL 2812736 (June 23, 2014). In *Dearing*, the plaintiff suffered chronic and severe pain due to a gunshot wound and surgery that had occurred many years before the incidents forming the basis for his lawsuit. In particular, the plaintiff alleged that the

medication the defendants prescribed was inadequate for his chronic neck pain. In analyzing the objective component, the court found that the plaintiff's medical condition did not fit within the "obvious" category of medical conditions, which is generally reserved for conditions "that involve a need 'for immediate or emergency medical attention.'" *Id.* at *7 (quoting *Blackmore*. 390 F.3d at 897). Instead, the court observed, the case involved "ongoing complaints of chronic pain from a seventeen-year old gunshot wound," and "[t]he fact that Plaintiff's chronic neck pain originated from a more acute injury (his pre-incarceration gunshot wound) does not transform that chronic pain itself into an 'obvious' or life-threatening acute medical event." *Id.* The court found the "delay in treatment" framework appropriate for the chronic nature of the plaintiff's medical condition. *Id.* at *8.

Here, as in *Dearing*, Hutchins's epilepsy is a chronic condition rather than an acute injury giving rise to an "obvious" or life-threatening medical event. And as in *Dearing*, Hutchins's epilepsy has been treated with medication for many years, but he alleges that the medication he was prescribed was inadequate. Thus, he must present evidence to establish the detrimental effect of the delay in treatment. Hutchins fails to present any evidence showing that after he refused to take the prescribed seizure medication, he suffered a serious medical injury or epileptic event. Notably, although Hutchins occasionally complained of symptoms, there is no evidence in the record showing that he suffered an emergent seizure episode or event requiring immediate medical attention. Therefore, Hutchins fails to establish the objective component for this aspect of his claim.

### b. Subjective Component

To establish this component, Hutchins must show that Nurse Harmon and Dr. Parker each acted deliberately and recklessly in the face of an unjustifiably high risk of harm that was

either known or so obvious that it should have been known. *Helphenstine*, 60 F.4th at 315–16. Hutchins cannot meet this burden.

First, as to both Defendants, Hutchins fails to show that his dental issue presented an unjustifiably high risk of harm. While Hutchins experienced tooth pain, his dental record shows that Dr. Fredericks repaired two teeth that had decayed due to missing fillings but did not indicate any serious dental issue or recommend further treatment. (ECF No. 54-1 at PageID.309.) The same is true for Hutchins's seizure issues. As already mentioned, there is no evidence that Hutchins's refusal to take his Topamax resulted in an event requiring emergent medical care.

Second, there is no evidence that either Defendant recklessly disregarded a risk of harm to Hutchins. As for Nurse Harmon, when Hutchins presented with complaints of tooth pain, she examined him and contacted Dr. Parker for orders. Each time Hutchins complained of pain, Nurse Harmon saw him and reviewed his treatment plan. When Dr. Parker's order for Naproxen expired, Nurse Harmon asked Hutchins if he would like it renewed. Although Nurse Harmon lacks the authority to prescribe or discontinue medications or make referrals to outside providers, when the pain medication and antibiotic failed to address Hutchins's pain, she obtained permission from a jail official to refer Hutchins to a dentist, and confirmed the plan with Dr. Parker. (ECF No. 54-2 at PageID.328.) As for seizure issues, Hutchins refused to take the medication that had been prescribed. When Hutchins reported that the seizure issue was worsening, Nurse Harmon spoke with Dr. Parker, who authorized her to make an appointment with a neurologist. (ECF No. 54-1 at PageID.315.) As to the timing of the appointment, neither Defendant had any control over how soon it would be scheduled.

As for Dr. Parker, as noted, he treated Hutchins's dental pain with pain medication and an antibiotic. When this course of treatment failed to improve Hutchins's pain, he approved the plan

14

to refer Hutchins to a dentist, and while the appointment was pending, he ordered additional pain medication and antibiotic. When Hutchins complained about pain in different teeth, he similarly ordered pain medication and an antibiotic.

Similarly, Dr. Parker prescribed seizure medication which Hutchins refused to take. When Hutchins began to seek treatment again in July 2022, Dr. Parker authorized Nurse Harmon to make him an appointment with a neurologist. Hutchins contends that instead of referring him to a neurologist, Dr. Parker should have prescribed Depakote, as he had done in 2017 and 2018. (ECF No. 54-1 at PageID.295; ECF No 57 at PageID.357–58.) This argument is nothing more than a disagreement with Dr. Parker's exercise of medical judgment, which is not the basis for a constitutional claim. *See Woodberry v. Simmons*, 146 F. App'x 976, 977 (10th Cir. 2005) (stating that "a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"); *Owens v. Hutchinson*, 79 F. App'x 159, 161 (6th Cir. 2003) (noting that "[a] patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim'); *Walker v. Abdellatif*, No. 1:07-cv-1267, 2009 WL 579394, at *7 (W.D. Mich. Mar. 5, 2009) (discussing that "medication adjustments involve the doctor's medical judgment regarding plaintiff's treatment," and a plaintiff's "disagreement with the health care providers regarding his diagnosis and treatment does not rise to the level of a federal constitutional violation" (citations omitted)).

2.      **Retaliation**

Hutchins contends that Nurse Harmon retaliated against him for filing grievances and complaints with LARA in violation of the First Amendment. A plaintiff must prove the following elements to establish a prima facie case of retaliation: (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of

ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In addition, a plaintiff must be able to prove that the protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Once the plaintiff has met this burden, if the defendant can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on summary judgment. *Thaddeus–X*, 175 F.3d at 399; *see Smith*, 250 F.3d at 1038.

It is undisputed that Hutchins satisfies the first element because he filed grievances with the jail and a complaint about Nurse Harmon with LARA.

As for the second element, adverse action, Hutchins alleges two actions. First, he alleges that on April 23, 2022, Nurse Harmon failed to renew his pain medication, causing him to miss his pain medication on April 24 and 25, 2022. (ECF No. 1 at PageID.3–4.) Second, Hutchins alleges that on July 7, 2022, Nurse Harmon retaliated by refusing to refer him back to the dentist. (*Id.* at PageID.4.) Beginning with the second alleged adverse action—refusing to refer Hutchins back to the dentist—as set forth above, Hutchins had claimed that Dr. Frederick told him that another tooth needed work and that he had run out of time to complete the work on that tooth. However, Nurse Harmon determined that Hutchins mischaracterized Dr. Frederick's treatment notes, which did not indicate that Dr. Frederick had not completed his work. (ECF No. 1 at PageID.309, 313; ECF No. 54-2 at PageID.326.) Thus, Nurse Harmon's refusal to send Hutchins back to the dentist was not an adverse action. As for failing to provide pain medication on April 24 and 25, a denial of medication could suffice to deter a person of ordinary firmness from

16

continuing to engage in protected conduct. *See O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338, 343 (6th Cir. Oct. 17, 2014) (citation omitted) (discussing that a "delay in treatment and discontinuance of medication would likely deter a prisoner . . . who believed he needed the medication to avoid the symptoms from which he allegedly suffered").

Hutchins's claim fails on the third element because he has presented no evidence linking Nurse Harmon's failure to renew his medication to his protected conduct. The Sixth Circuit has observed that "the temporal proximity between the prisoner's protected conduct and the official's adverse action" can provide circumstantial proof of the official's retaliatory motive. *Hill v. Lappin*, 630 F.3d 468, 475–76 (6th Cir. 2010). But it has also indicated that temporal proximity, without more, is insufficient to demonstrate the requisite causal connection. *See Smith*, 250 F.3d at 1038. In *Holzemer v. City of Memphis*, 621 F.3d 512 (6th Cir. 2010), the court observed that, in general, the Sixth Circuit has been reluctant to find that temporal proximity, alone, can establish that the filing of a grievance was a motivating factor, but it acknowledged the court's statements in First Amendment cases in the employment context that "on a particular set of facts, extremely close temporal proximity could permit an inference of retaliatory motive." *Id.* at 526 (quoting *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010)); *see also Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (stating that temporal proximity may be "significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive") (*quoting DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)).

Here, temporal proximity is all Hutchins has. In contrast, other evidence shows that Hutchins's grievance activity did not motivate Nurse Harmon to retaliate. That is, on April 22, 2022, Nurse Harmon spoke with Dr. Parker to obtain permission to extend the order for pain medication. Dr. Parker extended it through the completion of the antibiotic, presumably April 23,

2022. (ECF No. 54-1 at PageID.299.) Hutchins had filed grievances prior to that date (ECF No. 54-4 at PageID.334–35), yet Nurse Harmon took it upon herself to inquire about extending the pain medication order. In addition, in spite of those prior grievances, Nurse Harmon never retaliated by withholding Hutchins's medication. Moreover, on April 25, 2022, Nurse Harmon inquired about Hutchins's pain and asked whether he would like the medication renewed. (*Id.* at PageID.299–300.) Although Hutchins declined her offer, the following day Nurse Harmon obtained a 30-day order of pain medication. (*Id.* at PageID.307.) In short, Hutchins offers nothing more than his own speculation to support his claim of retaliation. Finally, Hutchins fails to rebut with evidence Nurse Harmon's statement that she would have provided the same care in the absence of Hutchins's protected activity. (ECF No. 54-2 at PageID.328.)

### IV.  Conclusion

For the reasons set forth above: (1) **IT IS HEREBY ORDERED** that Hutchins's Motion to Strike Defendants' Exhibit E (ECF No. 56) is **DENIED**; and (2) I recommend that the Court **grant** Defendants' Motion for Summary Judgment (ECF No. 54) and dismiss this action with prejudice.

Dated: February 29, 2024  /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge

### NOTICE TO PARTIES

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).